```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
                                     :
AMERICAN INTERNATIONAL GROUP,        :
INC., et al.,                        :
                                     :
                    Plaintiffs,      :
         v.                          :      11 Civ. 6212 (BSJ)
                                     :      **Memorandum & Order**
BANK OF AMERICA CORPORATION,         :
et al.,                              :
                                     :
                    Defendants.      :
                                     :
------------------------------------ X
```

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Defendants move to disqualify counsel for Plaintiffs, Quinn Emanuel Urquhart & Sullivan LLP ("Quinn") from representing Plaintiffs, American International Group, Inc., et al., ("AIG") in their suit against Defendants, Bank of America Corporation, et al. ("Bank of America"). Defendants allege a disqualifying conflict of interest arising from a former Quinn partner, Marc Becker's, previous representation of Merrill Lynch & Co., Inc. ("Merrill Lynch") and First Franklin Financial Corporation ("First Franklin") while a partner at Munger, Tolles & Olsen LLP ("Munger"). Merrill Lynch and First Franklin are now wholly owned subsidiaries of Bank of America and they are Defendants in the underlying action. For the reasons that follow, Defendants' motion is denied.

**BACKGROUND**

1

The underlying action in this case involves a suit by AIG against Bank of America seeking damages on the theory that Bank of America sold securities to AIG that were backed by substandard mortgages. Specifically, Plaintiffs allege that the Defendant-originators (including First Franklin) of the underlying loans "encouraged borrowers to falsify loan applications, pressured property appraisers to inflate home values, and ignored obvious red flags in the underwriting process." Complaint, ¶ 3. They contend further that Defendants' underwriting guidelines in the lending process "had been replaced by an undisclosed governing principle: Defendants would originate or acquire any loan that could be sold to third-party investors like AIG through [residential mortgage-backed security ("RMBS")] securitization no matter how risky." Id. ¶ 4.[1]

Before joining Quinn in mid-2008, Becker was a partner at Munger. While at Munger, he was involved with the firm's representation of Merrill Lynch and First Franklin (then a wholly-owned subsidiary of Merrill Lynch) against claims by purchasers of mortgage loans and RMBS that various mortgage

---

[1] Plaintiffs originally brought this action in the Supreme Court for the State of New York, County of New York. Defendants removed the case to federal court pursuant to 28 U.S.C. § 632 and 28 U.S.C. § 1334(b). Defendants then filed a notice with the Judicial Panel on Multidistrict Litigation to transfer this case to the Central District of California where a multidistrict litigation involving eight actions against Countrywide is pending. Plaintiffs moved to remand to state court, challenging federal jurisdiction. On October 20, 2011, the Court denied that motion.

loans and RMBS originated and sold by First Franklin should be repurchased because they did not comply with underwriting guidelines and/or because First Franklin breached various representations and warranties in connection with those loans and securities. (Dworsky Decl. ¶¶ 2). Becker billed over 120 hours on this case before leaving Munger in 2008. (Id. Ex. B.) He participated in client interviews and meetings regarding Defendants' loan underwriting practices; conducted research on possible strategy; and reviewed the forensic analysis on various loans. (Id.).

After leaving Munger, Becker joined Quinn as a partner in Quinn's London office, in the Banking and Financial Institution Litigation practice group. In July 2011, Becker was asked to read and edit the draft complaint in the pending AIG case. He spent 2.8 hours reviewing and commenting on it. (Mem. of Law in Opp. to Motion to Disqualify at 9 ("Opp.")). A few months later, he spent 3 hours reviewing and commenting on a draft of Plaintiffs' motion for remand. (Id.). Those 5.8 hours of work were the extent of Becker's work on the case. At the time, Quinn was not aware of the conflict. (Opp. at 17; Carlinsky Decl, ¶¶15-16; Becker Decl., ¶ 4).

Defendants claim that they first realized the putative conflict on September 8, 2011 (one month after Plaintiffs' complaint was filed), when Munger lawyers consulted past work in

3

the area and discovered Becker's memoranda dealing with the Merrill Lynch/First Franklin representation. (Dworsky Decl., ¶ 10). On September 19, 2011, Munger partners wrote to Quinn identifying the conflict, asking whether Becker had already been involved with the AIG case, and whether the firm had implemented any screening measures. (Id. ¶ 11). In its initial response, Quinn (through outside counsel, Gregory P. Joseph) did not directly answer whether Becker had worked on the AIG case or whether he had been screened from involvement. (Id. Exh. F). However, on October 5, 2011, Joseph sent Defendants another letter informing them that in July 2011, Becker was asked to review and comment on a draft complaint and that several months later Becker reviewed and edited AIG's motion to remand. The letter further stated that Quinn had not imposed any screening measures before Defendants raised the issue in early September. (Id. Exh. H). Because Defendants asserted a risk of future disclosures, Becker voluntarily left the firm on October 19. (Opp. at 11).

    Defendants now move to disqualify Quinn as counsel for Plaintiffs in that action on the ground that Becker previously worked on Munger's defense of Merrill Lynch and First Franklin against claims that are substantially the same as those in the present case. They argue that Becker's conflict should be

4

imputed to the firm. (Mem. of Law in Support of Defs.' Motion to Disqualify, at 4 ("Mot. to Disqualify")).

Plaintiffs do not dispute that Becker worked on the Merrill/First Franklin case while at Munger or that he contributed to the present AIG case. Nor do they deny that they were unaware of the conflict prior to September 19. However, Plaintiffs argue that the alleged conflict should not be imputed to Quinn because Becker's work on the case was minimal, no confidences were shared, and an ethical screen was erected promptly upon discovery of the conflict. Furthermore, because Becker has left the firm, they contend that there is no question that the screen will be effective going forward. Given these facts and circumstances, Plaintiffs argue that, notwithstanding Becker's conflict, Quinn's disqualification is unwarranted because there is not a substantial risk of trial taint. The Court agrees.[2]

## DISCUSSION

The New York Rules of Professional Conduct prohibit attorneys from successive representation. That is, an attorney may not represent a client whose interests are adverse to a former client in a substantially related matter, absent consent from the former client after full disclosure. N.Y. R. Prof'l

---

[2] Plaintiffs argue that none of the moving Defendants, aside from First Franklin and Merrill Lynch, has standing to bring this motion. The Court declines to address this argument, as it decides that disqualification is unwarranted in any event.

Conduct 1.9(a). The rule is designed to protect the former client's confidences, which the attorney is presumed to have acquired in the course of his representation. See Chinese Auto. Distribs. of Am. LLC v. Bricklin, No. 07-cv-4113, 2009 WL 47337, at *2-3 (S.D.N.Y. Jan. 8, 2009). The Rules impute the attorney's conflict to the firm. N.Y. R. Prof'l Conduct 1.10(a).

However, the Court's primary concern is with the integrity of the adversary process, not the enforcement of the ethical rules. For that reason, "not every violation of a disciplinary rule will necessarily lead to disqualification." Hempstead Video, Inc. v. Inc. Vill., 409 F.3d 127, 132 (2d Cir. 2005); see Bd. of Educ. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir. 1979); Reilly v. Computer Assocs. Long-Term Disability Plan, 423 F. Supp. 2d 5, 9 (E.D.N.Y. 2006).

Whether to disqualify an allegedly conflicted attorney or firm is left to the court's discretion. Hull v. Celanese Corp., 513 F.2d 568, 571 (2d Cir. 1975). Disqualification is disfavored in this Circuit and, as a result, the party seeking it must meet a high standard of proof before it is granted. Evans v. Artek Sys. Corp., 715 F.2d 788, 791 (2d Cir. 1983); Papyrus Tech. Corp. v. N.Y. Stock Exch., Inc., 325 F. Supp. 2d 270, 275 (S.D.N.Y. 2004); Paramount Commc'n, Inc. v. Donaghy, 858 F. Supp. 391, 394 (S.D.N.Y. 1994).

The Second Circuit instructs that disqualification is appropriate only where continued representation "poses a significant risk of trial taint." Glueck v. Jonathan Logan, Inc., 653 F.2d 746, 748 (2d Cir. 1981). "One recognized form of taint arises when an attorney places himself in a position where he could use a client's privileged information against that client," including through successive representation. Hempstead, 409 F.3d at 133. Courts will presume that the attorney shares his confidences with the firm, and so an attorney's successive representation risks disqualification of his firm as well. Id. at 133. In the Second Circuit, however, the confidence-sharing presumption is rebuttable. Id.; see also Arista Records LLC v. Lime Group LLC, No. 06-cv-5936, 2011 WL 672254, at *5 (S.D.N.Y. Feb. 22, 2011) (finding presumption rebutted because "there are no facts from which it may be inferred that [the firm] has obtained confidential information . . . and thus, there is no real risk that the trial will be tainted (citation and internal quotation marks omitted)).

Here, there is no doubt that Becker acquired confidential information in his representation of Merrill Lynch and First Franklin while at Munger. Nor is there any question that Becker was associated with Quinn during its current representation of AIG—the party now opposing Merrill Lynch and First Franklin. Thus, there is a presumption that Becker shared confidences

7

within Quinn. The only remaining question, therefore, is whether that presumption has been rebutted.

One method of rebutting the presumption is by demonstrating a timely and effective ethical screen "that fences the disqualified attorney from the other attorneys in the firm" in connection with the case for which the conflict is alleged. See, e.g., Intelli-Check, Inc. v. Tricom Card Tech., Inc., No. 03-cv-3706, 2008 WL 4682433, at *4 (E.D.N.Y. Oct. 21, 2008); Papyrus, 325 F. Supp. 2d at 278. Defendants argue that, here, the screen was untimely imposed, which counsels in favor of disqualification. (Mot to Disqualify at 15).

Quinn's screening procedure was imperfect, without question. Quinn admits that it failed to realize a potential conflict until Defendants asserted one, on September 19, 2011. Because Quinn was unaware of the conflict until September, Becker was asked to review and comment on the draft complaint and draft motion to remand. However, flawed screens—including late screens—are not fatal. In particular, screens erected immediately upon discovery of the conflict weigh against disqualification. See Reilly, 423 F. Supp. 2d at 12 (denying disqualification motion even though formal screen implemented nearly one month after disqualified attorney joined the firm); Papyrus, 325 F. Supp. 2d at 281 (finding screen timely even though erected 3 months into the representation when firm

8

learned attorney may have gained confidential information in his former representation). And here, Quinn erected an ethical screen within 24 hours of receiving notice of a conflict. (Carlinksy Decl., ¶¶ 15, 17).

Moreover, the Court finds that for several reasons Plaintiffs have rebutted the presumption that confidences were shared before the screen was erected. For one, Becker did not bring any confidential documents or files from Munger to Quinn, so there is "no chance" that Quinn attorneys could have seen any. (Becker Decl., ¶ 19); Reilly, 423 F. Supp. 2d at 12.

Also, as proof that no confidences were shared orally, Plaintiffs submit affidavits from all Quinn timekeepers who clocked more than 50 hours on the case swearing that no confidences were sought or received from Becker. (Carlinsky Decl. ¶ 3; Ginzburg Decl. ¶¶ 4,9, 11, Ex. A). Anyone else who recorded less than 50 hours on the case also confirmed that no confidences were sought or received (Ginzburg Decl., ¶ 11). And all temporary attorneys on the case have confirmed to the supervising associate that they have never communicated with Becker. (Coopla Decl., ¶ 5; Conway Decl., ¶ 5). Not only has Becker sworn that he did not share any confidences, he further avers that he recalls his previous work on the First Franklin matter only at a high level of generality, and that he does not remember any confidential information of First Franklin or

9

Merrill Lynch. (Becker Decl., ¶¶ 3, 4, 8, 36). Given that over three years have passed since his last day at Munger and his work on the First Franklin matter, it is credible that his "recollection of any confidential information has naturally diminished." Arista, 2011 WL 672254, at *7. Though Defendants argue that affidavits from potentially "infected" attorneys are insufficient to rebut the presumption of shared confidences, there is no such categorical rule. The authority on which Defendants rely for that proposition is questionable, as courts in this jurisdiction have since found that such affidavits are reliable proof that confidences have not been shared. See Arista, 2011 WL 672254, at *6; In re Del-Val Fin. Corp. Secs. Litig., 158 F.R.D. 270, 274-75 (S.D.N.Y. 1994); see also Intelli-Check, 2008 WL 4682433, at *5.

Lastly, the Court finds it unlikely that Becker inadvertently disclosed confidences before the screen was initiated given the "de facto separation" that existed between him and the case. See Hempstead, 409 F.3d at 138 (instructing courts that "in appropriate cases and on convincing facts, isolation—whether it results from the intentional construction of a 'Chinese Wall,' or from de facto separation that effectively protects against any sharing of confidential information—[can] adequately protect[] against the taint"). As a partner in the London office, Becker was physically separated

10

from the case. See Reilly, 423 F. Supp. 2d at 11 (finding geographic separation relevant), Intelli-Check, 2008 WL 4682433, at *5 (same). Additionally, he was electronically separated from the case. An electronic audit of the Quinn document management system revealed that the only two documents Becker accessed on the system related to the AIG action were two mark-ups of the remand brief. (Ginzburg Decl., ¶ 13). Becker never sought or obtained access to the folder relating to the action, which is maintained on a separate drive. (Id. ¶ 14; Becker Decl., ¶ 30). Finally, the Court notes that Quinn is a law firm with over 500 attorneys. Its "large size makes the risk of inadvertent disclosures of confidences less likely." Arista, 2011 WL 672254, at *6.

Against these facts, Defendants' argument that Quinn should not be allowed to take advantage of its client's confidences is unavailing. They cite to no examples of confidences that were actually shared, and "[m]ere speculation will not suffice." Paretti v. Cavalier Label Co., 722 F. Supp. 985, 987 (S.D.N.Y. 1989); Sommer v. Aronow, No. 95-cv-9230, 1998 WL 85748, at *3 (S.D.N.Y. 1998) ("Much more than defendants' mere speculation and conclusory allegations are required to disqualify a party's chosen attorney"). The Court is also unconvinced by Defendants' argument that this case is distinguishable because Becker actually performed work on the case before the screen was

erected. The Court declines to create a per se rule that any amount of work on a case requires disqualification. See Hempstead, 409 F.3d 127 (frowning upon per se rules in the context of disqualification motions). Thus, the Court finds that Plaintiffs have successfully rebutted the presumption of confidence sharing that would ordinarily lead to a risk of trial taint.

Further, the minimal degree of Becker's involvement in the case also erodes any risk of taint. Becker's 5.8 hours of editorial work is relatively insignificant compared to the nearly 7,400 hours that the firm has already dedicated to the case. (Opp. at 23; Carlinksy Decl., ¶¶ 5, 24-25). Becker's contributions to the draft documents were purely organizational and stylistic. In fact, none of his edits, other than a change to a section heading, were adopted in connection with the draft complaint. (Carlinsky Decl., ¶ 8). None of his comments on either draft mentioned First Franklin or Merrill Lynch. (Id. ¶¶ 10-12).

As such, there is no meaningful showing that the trial process here will be tainted. See Papyrus, 325 F. Supp. at 278 (noting that "[t]he touchstones of the imputation inquiry are the significance of the prohibited lawyer's involvement in and knowledge of the former client's confidences or secrets"). In contrast, given the significant relationship between AIG and

12

Quinn as well as the resources already spent litigating the case and the "transaction costs" attendant to finding new counsel, the Court finds that it would be unduly prejudicial to disqualify Quinn. See Reilly, 423 F. Supp. 2d at 8 (noting the "substantial transaction costs" that disqualification imposes on a party).[3]

## CONCLUSION

For the foregoing reasons, Defendants' motion to disqualify Quinn as Plaintiffs' counsel is denied.

SO ORDERED:

/s/ Barbara S. Jones
Barbara S. Jones
UNITED STATES DISTRICT JUDGE

Dated: New York, New York
December 6, 2011

---

[3] In a footnote, Plaintiffs ask the Court to make a finding that the ethical screen is sufficient on a going-forward basis, such that Becker may return to Quinn. The Court declines to do so.

13