UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------- X
                                     :
AMERICAN INTERNATIONAL GROUP,        :
INC., et al.,                        :
                                     :
                    Plaintiffs,      :
            v.                       :
                                     :
BANK OF AMERICA CORPORATION,         :
et al.,                              :
                                     :
                                     :
                    Defendants.      :
                                     :
-----------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/20/11

11 Civ. 6212 (BSJ)
**Memorandum & Order**

**BARBARA S. JONES**
**UNITED STATES DISTRICT JUDGE**

Plaintiffs, American International Group, Inc., et al. ("AIG") move pursuant to Rule 6.3 of the Local Rules of the Southern District of New York for reconsideration of this Court's order of October 20, 2011, denying AIG's motion for remand on the ground that Defendants, Bank of America Corporation, et al. ("BOA") established federal jurisdiction under 12 U.S.C. § 632. In the alternative, AIG moves the Court to certify the October 20 order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). For the reasons that follow, Plaintiffs' motion for reconsideration is denied and their motion for certification is granted.

## I.  Motion for Reconsideration

### A.  The Edge Act

The standard for granting a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). "Controlling authority means decisions of the Second Circuit Court of Appeals, or the U.S. Supreme Court, and Local Rule 6.3 should be strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." Psihoyos v. Wiley & Sons, Inc., No. 11-civ-1416, 2011 WL 5980423, at *1 (S.D.N.Y. Nov. 29, 2011).

Here, AIG argues that the Court improperly found that it had federal subject matter jurisdiction based on the Edge Act, 12 U.S.C. § 632, but has not shown any controlling authority or facts that the Court overlooked in arriving at this decision.

AIG first argues that the Court "overlooked" the central premise of Corporacion Venezolana v. Vintero Sales Corp., 629 F.2d 786 (2d Cir. 1980), namely, that the Edge Act requires a federally chartered bank to have been actually involved with the international banking transaction. It contends that here, the national bank—Bank of America, N.A.—was not involved in the relevant banking activities—lending in connection with territorial mortgages. This argument amounts to a disagreement

2

with the Court's interpretation of the case law, it does not suggest that the Court failed to consider it.  And "disagreement with the court's interpretation of precedent is not a proper ground for reconsideration."  Alzamora v. Vill., 534 F. Supp. 2d 436, 439 (S.D.N.Y. 2008).

In any event, the Court will not reconsider its interpretation of Corporacion Venezolana.  There, the Second Circuit found Edge Act jurisdiction based on the fact that a federally chartered bank provided letters of credit in connection with an underlying transaction between a New York and a Venezuelan corporation.  Although the bank was no longer a defendant in the action, as it had been dismissed by settlement, the Court nonetheless found that there was federal jurisdiction. The facts of that case were such that the national bank was, indeed, involved in the international transaction, but nowhere did the Second Circuit interpret the Edge Act to require such involvement.  If anything, the Court seemed to find significant the fact that the "complaint clearly viewed [the bank] as potentially liable for damages."  Id. at 792.  In short, absent a clearer statement, this Court does not understand Corporacion Venezolana to read an "involvement" requirement into § 632[1] and

---

[1] The jurisdiction-granting provision of the Edge Act states that a case "arise[s] under the laws of the United States if (1) the case is civil in nature, (2) one of the parties is a corporation organized under the laws of the United States, and (3) the suit arises out of transactions involving . . . . international banking or international financial operations."  Jana Master

finds the fact that the complaint names BOA as a successor-in-interest to Countrywide,[2] and "clearly view[s] [BOA] as potentially liable for damages" arising from the RMBS sales, as sufficient to confer Edge Act jurisdiction. Cf. In re Lloyds of Am. Trust Fund Litig., 928 F. Supp. 333, 340 (S.D.N.Y. 1996) (collecting cases demonstrating that the weight of authority upholds Edge Act jurisdiction "even though the international or foreign banking activity was not central to the case").

Concededly, the courts in this district have taken differing views on the proper scope of the Edge Act. Compare Lazard Freres & Co. v. First Nat'l Bank of Md., No. 91-cv-0628, 1991 WL 221087 (S.D.N.Y. Oct. 15, 1991); Bank of N.Y. & BNY Austr. Ltd. v. Bank of Am., 861 F. Supp. 225 (S.D.N.Y. 1994), with In re Lloyds, 928 F. Supp. 333; Pinto v. Bank One Corp., No. 02-cv-8477, 2003 WL 21297300 (S.D.N.Y. June 4, 2003); Contitrade Servs. Corp. v. Eddie Bauer, Inc., 794 F. Supp. 514 (S.D.N.Y. 1992). That this Court's opinion falls on one side of that spectrum is not grounds for reconsideration.

---

Fund, Ltd. v. JP Morgan Chase & Co., 490 F. Supp. 2d 325, 328 (S.D.N.Y. 2007).

[2] AIG represents that Countrywide was involved in two of the RMBS with territorial mortgages. (Reply Mem. of Law in Support of Mot. to Remand, at 5.) AIG cites Viqueira v. First Bank, 140 F.3d 12 (1st Cir. 1998), for the proposition that successor liability claims are insufficient to create federal subject matter jurisdiction. The Court interprets that case only to mean that the existence of a non-federal successor bank to a federally chartered bank does not automatically create federal jurisdiction.

As a general matter, the Court appreciates that "a district court cannot find that it has § 632 jurisdiction merely because there was a federally chartered bank involved, there were banking-related activities, and there were foreign parties," Lazard Freres, 1991 WL 221087, at *2, and that it "should satisfy itself that the suit arises out of an international or foreign transaction which falls within the realm of those characterized as traditional banking activities." Bank of N.Y., 861 F. Supp. at 232 (internal quotation marks omitted). But the October 20 order is not inconsistent with those principles. Here, four RMBS contained mortgages on territorial properties.[3] The lending in connection with those properties constituted traditional banking activity. See Conjugal Soc'y Composed of Juvenal Rosa v. Chi. Title Ins. Co., 690 F.2d 1, 4 (1st Cir. 1982); Bank of N.Y., 861 F. Supp. at 232. AIG challenges those lending practices and, as such, the banking activities are legally significant. Accordingly, for those RMBS, the suit here "arises under" federal law.

AIG also argues that the Court failed to consider whether it should exercise supplemental jurisdiction under 28 U.S.C. §

---

[3] The Court notes that in the motion for remand, the parties contended that there were four RMBS with territorial mortgages. In its reply to BOA's opposition to the motion for remand, and in its motion for reconsideration, AIG maintains that there are only three such RMBS. Though the Court continues to refer to the four RMBS, the difference between three and four is immaterial to its analysis.

1367 over the remaining "claims" that did not involve territorial mortgages.  This argument is without merit.

There is no dispute that four RMBS contained territorial mortgages implicated in one or more of AIG's seven causes of action.  The Court has discretion to exercise supplemental jurisdiction over the remaining RMBS and causes of action.  The Court may exercise this discretion notwithstanding the fact that the number of Edge Act-eligible RMBS is small (4) relative to the total (349).[4]  It is beyond peradventure that if a district court has original jurisdiction over a single claim, it has original jurisdiction over a "civil action" within the meaning of § 1367, and then has the power to exercise supplemental jurisdiction over any remaining claims, regardless whether those that remain outnumber those falling under the court's original jurisdiction.  Exxon Mobile Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 559 (2005).  Though § 1367 allows, it does not compel, courts to decline to exercise that discretion in certain circumstances.[5]  The Court finds it appropriate to exercise its

_____

[4] To the extent AIG again challenges the Court's finding of jurisdiction based on 4 out of 349 RMBS, the Court maintains that a suit satisfies the Edge Act's jurisdictional requirements so long as "any part of it arises out of transactions involving international or foreign banking."  See Pinto, 2003 WL 21297300, at *3.

[5] Those include circumstances where: "the claim raises a novel or complex issue of State law"; "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction"; "the district court has dismissed all claims over which it has original jurisdiction"; or "in exceptional circumstances, there are other compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c).

supplemental jurisdiction over those claims for which it does
not have original jurisdiction pursuant to the Edge Act.

Finally, AIG claims that the Court overlooked its policy
arguments against extending Edge Act jurisdiction to the facts
of this case.  Again, AIG fails to point to a controlling
decision or factual matter that this Court overlooked, but
rather reasserts an argument that the Court did not find
convincing the first time.

**B.   "Related To" Jurisdiction**

The Court's October 20 order did not address BOA's
alternative basis for federal jurisdiction over this case, as a
civil proceeding "related to" cases under the United States
Bankruptcy Code.  28 U.S.C. § 1334(b).  At AIG's request, the
Court will do so now.

Under 28 U.S.C. § 1452, a party may remove a claim to the
district court if the district court has jurisdiction under 28
U.S.C. § 1334.  Section 1334 establishes original jurisdiction
over proceedings "related to cases under title 11."  28 U.S.C. §
1334(b).  Asserting jurisdiction on this ground, BOA claimed the
action is "related to" nineteen bankruptcy proceedings because
it (or the other named "Defendants") is entitled to
indemnification or contribution from those bankrupt entities,
who were either sponsors or originators of mortgages in the
RMBS.  In its motion for remand, AIG argued that none of these

bankruptcy proceedings could support "related to" jurisdiction. In the alternative, AIG argued that, even if "related to" jurisdiction exists, this Court should equitably abstain from exercising that jurisdiction.

With respect to nine of these bankruptcies, AIG challenges them on the ground that the claims were filed after the bar date, or because the proceeding was not named in the prospectus settlement, or both.  In five others, AIG contends that Defendants have no indemnification rights.  It also points out that two other proceedings have closed.  (Margolin Decl., ¶¶ 11-12.)  Though BOA does not concede that these sixteen bankruptcies are "irrelevant," as AIG argues,[6] the Court need not address BOA's counterarguments because it finds that the remaining three bankruptcy proceedings provide a sufficient basis for "related to" jurisdiction.  These are:  In re American Home Mortgage Corp., No. 07-11051 (Bankr. D. Del. Aug. 6, 2007) (jointly administered with 07-11047) ("American Home"), In re Alliance Bancorp, 07-10942 (Bankr. D. Del. July 13, 2007) ("Alliance"), and In re First NLC Fin. Serv., LLC, No. 08-10632 (Bankr. S.D. Fla. Jan. 18, 2008) ("First NLC").

The Second Circuit's standard for determining "related to" jurisdiction—which is followed by the majority of jurisdictions—

---

[6] BOA does, however, abandon its claims in connection with two proceedings, Lehman Bros. Holdings, Inc. and People's Choice Home Loan.  (Opp. at 19 n.9.)

was first articulated by the Third Circuit in In re Pacor, Inc.,
743 F.2d 984 (3d Cir. 1984), overruled on other grounds by
Things Remembered, Inc. v. Petrarca, 516 U.S. 124 (1995):

> [T]he test for determining whether a civil proceeding
> is related to bankruptcy is whether the outcome of
> that proceeding could conceivably have any effect on
> the estate being administered in bankruptcy. . . . An
> action is related to bankruptcy if the outcome could
> alter the debtor's rights, liabilities, options, or
> freedom of action (either positively or negatively)
> and which in any way impacts upon the handling and
> administration of the bankrupt estate.

Id. at 994 (emphasis added); see In re Refco, Inc. Secs. Litig.,
628 F. Supp. 2d 432, 437-48 (S.D.N.Y. 2008) (noting that the
Second Circuit has adopted this "expansive" test for determining
"related to" jurisdiction).  This is known as the "conceivable
effects" test.

By AIG's own admission, a recovery in favor of AIG could
have a "conceivable effect" on each of these three bankruptcy
proceedings.  (Mot. for Remand at 16-17.)  In at least one
scenario, an AIG recovery against BOA would reduce the unsecured
creditors' anticipated recovery by .3% in the Alliance
bankruptcy, by 3.2% in the First NLC bankruptcy, and by .1% in
the American Home bankruptcy.  (Pls.' Margolin Decl., ¶ 19.)

AIG argues, however, that this effect, though conceivable,
is too insignificant to qualify the present civil action as
"related to" those bankruptcy proceedings.  See In re Turner,
724 F.2d 338, 341 (2d Cir. 1983); In re Holland Indust., Inc.,

9

103 B.R. 461, 468 (Bankr. S.D.N.Y. 1989).  Though the Second Circuit once required a "significant connection" to the bankruptcy case, in addition to a "conceivable effect," it has in more recent decisions backed away from that additional (or alternative) requirement.  In re Cuyahoga Equip. Corp., 980 F.2d 110 (2d Cir. 1992); see In re Tower Auto., Inc., 356 B.R. 598, 600 (Bankr. S.D.N.Y. 2006) (noting that since Cuyahoga, the existence of a "conceivable effect" on the bankruptcy establishes "related to" jurisdiction).  The Court is thus unpersuaded by AIG's citation to case law in other jurisdictions, rejecting "related to"  jurisdiction because the effect was not substantial or concrete enough, and adhere to the Second Circuit's standard which requires only a "conceivable effect."

AIG raises additional reasons why the Court should reject jurisdiction in connection with these three bankruptcies.  With respect to the Chapter 7 bankruptcies, Alliance and First NLC, it points out that Defendants' proofs of claim were filed after the bar state, which is akin to a statute of limitations.  See In re Keene Corp., 188 B.R. 903, 907 (Bankr. S.D.N.Y. 1995). However, even untimely claims can have some effect on a bankruptcy estate, as they may be paid after all timely, unsecured debtors' claims are satisfied.  11 U.S.C. § 726(a)(3). And "[h]owever unlikely it might be that there will be

sufficient value in the estate to provide for actual
distributions . . . the prospect of an effect on distributions
is conceivable and is . . . sufficient to render [the] adversary
proceeding 'related to' Debtors' bankruptcy proceedings." In re
Extended Stay Inc., 435 B.R. 139, 150 (Bankr. S.D.N.Y. 2010).

With respect to the American Home proceeding, AIG claims
there must be a "close nexus"—rather than just a "conceivable
effect"—because it is a Chapter 11 bankruptcy with a confirmed
liquidation plan.  The "close nexus" test, which is sometimes
applied after plan confirmation, requires that "[f]irst the
matter must have a close nexus to the bankruptcy plan or
proceeding, as when a matter affects the interpretation,
implementation, consummation, execution or administration of the
confirmed plan and second, the plan must provide for the
retention of jurisdiction over the dispute." Savoy Senior
Housing Corp. v. TRBC Ministries, LLC, 401 B.R. 589, 597 (Bankr.
S.D.N.Y. 2009).

The Court is not inclined to apply the "close nexus" test
here.  The Second Circuit has not squarely addressed the
question of whether a "close nexus" is required where a
liquidation (rather than reorganization) plan has been
confirmed, In re Refco, 628 F. Supp. 2d at 442, and several
courts have applied the "conceivable effects" test instead.
See, e.g., In re DPH Holdings Corp., 437 B.R. 88, 97 (Bankr.

11

S.D.N.Y. 2010) (suggesting that the "close nexus" test is overly restrictive where plan is liquidating); In re New 118th LLC, 396 B.R. 885, 891, 895 (Bankr. S.D.N.Y. 2008). But see Savoy Senior Housing Corp., 401 B.R. at 597. Even if the "close nexus" test were applied, the Court finds it satisfied given that, as originators, American Home may be liable on Defendants' indemnification claims (which arose immediately upon the filing of the civil action) and contribution claims (for which New York state law provides against joint tortfeasors[7]) and thus stands to affect the implementation, execution, and/or administration of the confirmed plan. See City of Ann Arbor Employees' Ret. Sys. v. Citigroup, 572 F. Supp. 2d 314, 317 (E.D.N.Y. 2008) (noting possible impact on debtor estate from indemnification claims in connection with allegedly fraudulent conduct under the 1933 Act). The plan also provides for the retention of jurisdiction over, inter alia, "all causes of action . . . and proceedings to recover Assets of the Estates or of the Plan Trust." (Margolin Decl., Ex. 9, at 91-94).[8]

---

[7] AIG argues that indemnification would be barred by public policy as a contract that indemnifies a party for intentional or fraudulent conduct. (Mot. for Remand at 17 n.24.) Regardless whether New York's public policy would forestall such recovery, AIG overlooks the fact that New York law expressly provides for contribution from joint tortfeasors. N.Y. C.P.L.R. § 1401.

[8] AIG vaguely asserts that the American Home confirmed plan does not retain "jurisdiction over this case." (Mot. to Remand at 17 n.26.) It is unclear what AIG means by this statement, as the confirmed plan clearly provides for the retention of jurisdiction over many aspects of the bankruptcy case.

In sum, because AIG's civil action against BOA could have some "conceivable effect" on the <u>Alliance</u>, <u>First NLC</u>, and <u>American Home</u> bankruptcy proceedings, the Court finds that there is "related to" jurisdiction under § 1334(b).

Notwithstanding the presence of "related to" jurisdiction, a district court may abstain from exercising that jurisdiction on "any equitable ground," 28 U.S.C. § 1452(b), including "the interest of justice, or in the interest of comity with State courts or respect for State law."  § 1334(c)(1).  Given the relatively small number of loans implicated by Defendants' potential claims in these estates (.52% of the total number of loans), and the extent to which state law claims in this action predominate over bankruptcy law issues (of which there are none), there are compelling reasons for equitable abstention. However, because the Court has decided that the Edge Act also provides a basis for subject matter jurisdiction, in which context abstention is not appropriate, it need not decide whether to equitably abstain from exercising its "related to" jurisdiction.

## II.  Motion for Certification for Interlocutory Appeal

A district court may certify an order for interlocutory appeal under 28 U.S.C. § 1292(b) if the order: "(1) involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) that an

immediate appeal would materially advance the ultimate termination of the litigation." Lidle v. Cirrus Design Corp., No. 08-cv-1253, 2010 WL 4345733, *1 (S.D.N.Y. Oct. 29, 2010) (internal quotation marks omitted).

Here, in connection with its Edge Act analysis, the Court finds that this order involves a controlling question of law as to which there is substantial ground for difference of opinion, namely, whether a federally chartered bank must have been involved with the foreign or international transaction at issue to confer jurisdiction under 12 U.S.C. § 632.  The Court finds that the resolution of this question by an immediate appeal may materially advance the ultimate termination of this litigation by establishing whether federal jurisdiction is proper or whether this case should proceed in state court.

### CONCLUSION

For the reasons set for above, Plaintiffs' motion for reconsideration is denied and its request for certification is granted.

SO ORDERED:

_____
Barbara S. Jones
UNITED STATES DISTRICT JUDGE

14

Dated:    New York, New York
          December 19, 2011