UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN INTERNATIONAL GROUP, INC., et al.,<br><br>    **Plaintiffs,**<br><br>    -against-<br><br>BANK OF AMERICA CORPORATION, et al.,<br><br>    **Defendants.** | 11 Civ. 6212 (LAK) |

**PLAINTIFFS' REPLY REGARDING DEFENDANTS' ARGUMENT THAT, EVEN THOUGH A TERRITORIAL BANKING TRANSACTION WAS CONDUCTED BY A NON-FEDERALLY CHARTERED ENTITY, THE EDGE ACT BECOMES APPLICABLE BY VIRTUE OF THAT ENTITY'S YEARS-LATER MERGER INTO A FEDERALLY CHARTERED BANK**

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Michael B. Carlinsky
Maria Ginzburg
Sanford I. Weisburst

51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone: (212) 849-7000
Fax: (212) 849-7100
michaelcarlinsky@quinnemanuel.com
mariaginzburg@quinnemanuel.com
sandyweisburst@quinnemanuel.com

*Attorneys for Plaintiffs*

The Second Circuit held that, "for [the Edge Act's] grant of federal jurisdiction and removability to apply, [1] the suit must have a federally chartered corporation as a party, and [2] *the suit must arise out of an offshore banking or financial transaction **of that federally chartered corporation***." *Am. Int'l Grp. v. Bank of Am. Corp.*, 712 F.3d 775, 784 (2d Cir. 2013) (emphasis and brackets added); *see also id.* at 781 (Congress was concerned with "the engagement by Edge Act banks in offshore banking transactions"). Defendants' argument fails that test because MLCC was not a federally-chartered bank in 1995-96, when it originated its two territorial loans. MLCC's merger into BANA (a federally-chartered bank) in 2011—more than a decade later—does not change this result: The territorial transactions here could not have been "[conducted] … through … [BANA's] ownership" of MLCC, *id.* at 781 (quoting 12 U.S.C. § 632), because there was no such ownership at the time of the transactions. Defendants' argument should be rejected.

**1.** At the threshold, Defendants' argument is waived. The Second Circuit directed this Court to decide waiver by evaluating whether Defendants had "no opportunity" to raise the argument in this Court (Jones, J.) prior to AIG's appeal. Order, *Am. Int'l Grp. v. Bank of Am. Corp.*, No. 12-1640 (2d Cir. June 21, 2013), ECF No. 159. Defendants plainly had such an opportunity in opposing AIG's motion to certify Judge Jones' order for interlocutory appeal.

Defendants concede (ECF 106 at 4) that AIG sought § 1292(b) certification so that the Circuit could decide, *inter alia*, whether the Edge Act applies even though "no federally chartered bank was involved in the mortgages when they were originated." ECF 46 at 5-6. Defendants also concede (ECF 106 at 4) that one response, to show that AIG had not met the "controlling question of law" prerequisite to § 1292(b) certification, is their current claim that MLCC's origination of these mortgages, followed by its merger into BANA, satisfies the Edge Act. And Defendants do not contest that they failed to advance their current argument in opposing AIG's motion.

Instead, Defendants contend that, because they presented *another* argument that AIG's Edge Act issues were not "controlling question[s] of law," they should be excused for failing to assert the argument they press now.  But Defendants cite no authority supporting this notion, which is contrary to judicial economy insofar as it would allow Defendants to deprive the district court (before certifying the order for appeal) and the appellate court (on appeal) of the opportunity to address their present argument.  Defendants' suggestion is in any event refuted by the Circuit's instruction that waiver turns on whether Defendants had "no opportunity" to raise their argument before AIG's appeal.  As shown, Defendants had ample opportunity.[1]

**2.**  Even if Defendants' argument were not waived, it should be rejected because it is flatly inconsistent with the Second Circuit's decision.  Defendants ignore the crucial passage of the Second Circuit's decision, which holds that the Edge Act (12 U.S.C. § 632)  provides federal jurisdiction if:

> [A]ny corporation organized under the laws of the United States shall be a party, [and the suit] aris[es] out of transactions involving international or foreign banking, or banking in a dependency or insular possession of the United States, or out of international or foreign financial operations, [*which it has conducted*] either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries.

*Am. Int'l Grp.*, 712 F.3d at 780-81 (quoting 12 U.S.C. § 632) (brackets in original) (emphasis added).  The statute thus requires that the offshore transaction forming the basis for Edge Act jurisdiction have been "conducted"—in the past tense, as a matter of historical fact—by an institution organized under federal law *at the time of the transaction*.  This is underscored by the

---

[1]  Indeed, Defendants waived reliance on the two MLCC loans even earlier:  Despite bearing the burden of establishing jurisdiction, *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011), Defendants failed, in either their notice of removal or their opposition to AIG's remand motion, explicitly to identify any connection between MLCC and a territorial banking transaction.  *See, e.g.*, *Schepis v. Local Union No. 17*, 989 F. Supp. 511, 516 (S.D.N.Y. 1998) (argument in favor of removal waived if not presented in notice of removal); *Bova v. U.S. Bank, N.A.*, 446 F. Supp. 2d 926, 937 (S.D. Ill. 2006) (invocation of fraudulent joinder in notice of removal insufficient to preserve specific supporting argument that defendant had not raised).

Circuit's enumeration of the types of territorial transactions in which a federally-chartered bank's *indirect* involvement suffices: transactions "[which it has conducted] … through the agency, ownership or control of branches or local institutions." *Id.* at 781 (brackets in original). The use of "conducted … through" before "the agency, ownership or control of branches or local institutions" makes clear that the relationship must exist at the time of the transaction. Moreover, Congress could have added, but did not add, the additional phrase "or the subsequent merger or acquisition." *Compare* 28 U.S.C. § 1364(a) ("The district courts shall have original and exclusive jurisdiction … of any civil action commenced by any person against an insurer who by contract has insured an individual, *who is*, or was at the time of the tortious act or omission, a member of a mission ….") (emphasis added).

As the Circuit explained, this interpretation is compelled not only by § 632's text, but also its purpose to "encourag[e] and facilitat[e] … the engagement by Edge Act banks in offshore banking transactions" by providing access to the federal courts "in suits relating to the activities the Act seeks to promote, to wit, the [Edge Act] banks' engagement in offshore banking transactions." *Am. Int'l Grp.*, 712 F.3d at 781. This purpose plainly extends only to a transaction by an entity that is an Edge Act bank at the time it conducts the transaction, not an entity that merges into an Edge Act bank more than a decade later.

Here, there was no territorial banking transaction conducted by an Edge Act bank. Recognizing as much, Defendants contend that two territorial transactions undertaken by MLCC (a non-Edge-Act entity) later became transactions "of" BANA (an Edge Act bank) by reason of MLCC's merger into BANA more than a decade after the transactions. ECF 106 at 7-9. But this is inconsistent with the Second Circuit's interpretation of § 632, as explained above.

Lacking support in the Second Circuit's decision, Defendants invoke (ECF 106 at 6) the "usual rule … that removability is determined from the record as of the time the petition for

3

removal is filed." *United Food & Commercial Workers Union, Local 919 v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (citing Wright & Miller, Federal Practice & Procedure § 3723). But this rule, which mainly applies to diversity cases,[2] has no bearing on a jurisdictional statute (like the Edge Act) that explicitly focuses on underlying events that necessarily occurred prior to the filing of the complaint. For example, under the Westfall Act, whether a suit is deemed one against the United States (and hence within federal jurisdiction under 28 U.S.C. § 1346(a)) depends on whether a federal employee was "acting within the scope of his office or employment *at the time of the incident out of which the claim arose*." 28 U.S.C. § 2679(d) (emphasis added); *see also, e.g.*, *id.* § 1442(a) (permitting removal of actions against federal officers arising out of acts under color of office). Similarly here, the Edge Act predicates jurisdiction on the occurrence of an event before suit was filed: The territorial banking transaction must have been "[conduct*ed*] either directly or through the agency, ownership, or control of branches or local institutions in dependencies or insular possessions of the United States or in foreign countries." *Am. Int'l Grp.*, 712 F.3d at 781 (brackets in original) (emphasis added). And even if the "usual rule" could apply to statutes like the Westfall Act and the Edge Act, it is merely a "general principl[e]" that is "susceptible to exceptions," *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830, 109 S.Ct. 2218, 2222 (1989), exceptions that would clearly have to be crafted for the Westfall Act and the Edge Act given their explicitly backward-looking language.

---

[2] *See, e.g.*, Wright & Miller, *supra*, § 3723 ("Removal Based on Diversity of Citizenship and Alienage Jurisdiction"). 28 U.S.C. § 1332(a) requires complete diversity of citizenship and an amount in controversy in excess of $75,000, and is *silent* on the time at which such requirements must be met. Courts thus have held that they must be met at the time the complaint is filed. *See id.* (collecting cases). Of the cases Defendants cite in support of applying this purported rule here (ECF 106 at 6), *United Food* involved diversity jurisdiction, and *F.D.I.C. v. Four Star Holding Co.*, 178 F.3d 97 (2d Cir. 1999), involved 12 U.S.C. § 1819(b)(2)(A), under which the only requirement for jurisdiction is the presence of the F.D.I.C. as a party at the time suit is filed.

4

Defendants also erroneously suggest (ECF 106 at 9) that *Viqueira v. First Bank*, 140 F.3d 12 (1st Cir. 1998), supports their construction of the Edge Act. *Viqueira* **rejected** Edge Act jurisdiction, on the ground (not at issue here) that no federally chartered bank was a party to the case. *See id.* at 19. With respect to *that* prerequisite, it is appropriate to focus on the time of suit: § 632 requires that a party to the case be an Edge Act bank at the time of suit, in the same way that diversity jurisdiction requires that the parties have diverse citizenship at the time of suit. But the presence of an Edge Act bank as a party is not questioned here. Instead, jurisdiction turns on the *separate* Edge Act prerequisite that the case arise out of an offshore transaction *conducted by* that Edge Act party. As explained above, that prerequisite demands a focus on whether the transaction in question was one that Congress intended to facilitate because of an Edge Act bank's involvement. Both *Viqueira* and this case fail to qualify for Edge Act jurisdiction: *Viqueira* failed the former prerequisite, and this case fails the latter.

Finally, Defendants' arguments (ECF 106 at 10 n.2) against the constitutional-avoidance canon are incorrect. While the D.C. Circuit upheld § 632 as applied to the facts in *A.I. Trade Finance, Inc. v. Petra International Banking Corp.*, 62 F.3d 1454 (D.C. Cir. 1995), it did so on the basis that questions of federal law could arise in a case implicating a *foreign or territorial transaction that an Edge Act bank had conducted*: Such a controversy could put the "Edge Act corporation's powers and limitations" in issue, and those powers and limitations are creatures of federal law. *Id.* at 1463; *see also Am. Int'l Grp.*, 712 F.3d at 779 (extensively quoting *A.I. Trade*). No such question of federal law is likely to arise in this case because, unlike in *A.I. Trade*, the territorial transactions here were not conducted by an Edge Act bank.[3]

---

[3] AIG disagrees with Defendants' assertion (ECF 106 at 9-10) that Judge Jones' conclusion that there is no *de minimis* exception to the Edge Act is "law of the case." AIG raised that issue on appeal, and the Second Circuit did not address it because it had no need to do so in light of its ruling on another ground that the Edge Act does not apply here.

5

## **CONCLUSION**

This Court should remand this case to New York state court because the Edge Act does not provide federal jurisdiction and because "related to" bankruptcy jurisdiction should be relinquished through mandatory and/or permissive abstention.

DATED:  October 23, 2013                                              Respectfully submitted,


                                                QUINN EMANUEL URQUHART &
                                                   SULLIVAN, LLP


By: /s/ Michael B. Carlinsky
     Michael B. Carlinsky
     Maria Ginzburg
     Sanford I. Weisburst

     51 Madison Avenue, 22nd Floor
     New York, New York 10010-1601
     Telephone:  (212) 849-7000
     Fax:  (212) 849-7100
     michaelcarlinsky@quinnemanuel.com
     mariaginzburg@quinnemanuel.com
     sandyweisburst@quinnemanuel.com

*Attorneys for Plaintiffs*